IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| OPENCOMMERCE GROUP, INC., a Delaware corporation, and BGROUP LIMITED, a Hong Kong limited company,<br><br>Plaintiffs,<br><br>-against-<br><br>DEREK DEYOUNG and CANVASFISH.COM, LLC, a Montana limited liability company,<br><br>Defendants. | Case No. _____ |

# COMPLAINT

Plaintiffs OPENCOMMERCE GROUP, INC., a Delaware corporation, and BGROUP LIMITED, a Hong Kong limited company (collectively, "ShopBase"), by and through their undersigned attorneys, and in support of their Complaint against Defendants DEREK DEYOUNG and CANVASFISH.COM, LLC, a Montana limited liability company (collectively "Defendants"), state as follows:

## NATURE OF THE CASE

1. OpenCommerce Group, Inc. operates an internet platform called ShopBase, which offers an online marketplace for e-commerce merchants to sell their goods online on a global scale.[1]

---

[1] Before May 31, 2021, the ShopBase platform was operated by BGroup Limited. Since then, ShopBase has been operated by OpenCommerce Group, Inc. For ease of reference, both entities will be referred to collectively as "ShopBase" throughout this Complaint unless specifically indicated otherwise.

2. Derek DeYoung ("DeYoung") is a visual artist whose work primarily depicts scenes of fly fishing; Canvasfish.com LLC ("Canvasfish") owns DeYoung's intellectual property.

3. In January 2020, DeYoung filed a lawsuit against various ShopBase parties, in the Western District of Michigan, asserting claims for copyright infringement, trade dress infringement, and various state law claims (the "Michigan Lawsuit").[2]

4. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.

5. On or about July 12, 2021, DeYoung initiated a federal lawsuit in the Northern District of Illinois alleging trademark and copyright infringement against ten "John Doe" defendants in connection with online sales of products containing allegedly counterfeit versions of Canvasfish's trademarks and/or unauthorized use of Canvasfish's copyrights (the "Illinois Lawsuit").[3]

6. ██████████████████████████, Defendants moved for an *ex parte* temporary restraining order ("TRO") against ShopBase, among others, seeking to freeze assets and/or accounts that Canvasfish claimed were linked to the sale of infringing products.

7. Upon information and belief, Defendants knowingly filed for an overbroad *ex parte* TRO in the Illinois Lawsuit and conducted little if any due diligence and pre-filing fact investigation. Upon information and belief, Defendants obtained a TRO against ShopBase to

---

[2] The Michigan Lawsuit was captioned *Derek DeYoung v. BGroup, Ltd., et al.*, 1:20-cv-51 (W.D. MI).
[3] The Illinois Lawsuit is captioned *Canvasfish.com, LLC v. Does (1-10)*, Case No. 1:21-cv-003676 (N.D. Ill).

cripple its business and to force a settlement that bears no relation to any theory of liability or damages.

8. ShopBase seeks to recover damages, including reasonable attorneys' fees and costs, to compensate ShopBase for the harm caused by Defendants' wrongful actions.

## THE PARTIES

9. Plaintiff OpenCommerce Group, Inc. ("OpenCommerce") is a Delaware corporation with its principal place of business in San Francisco. OpenCommerce has operated the ShopBase platform since May 31, 2021.

10. Plaintiff BGroup Limited ("BGroup") is a Hong Kong limited company with its principal place of business in Hanoi City, Vietnam. BGroup operated the ShopBase platform through the end of May 2021.

11. Upon information and belief, Derek DeYoung is an individual residing in Traverse City, Michigan.

12. Defendant Canvasfish.com, LLC is a Montana limited liability company with its principal place of business at 14895 Shipman Road, Traverse City, Michigan 49686. Upon information and belief, Canvasfish owns all right, title, and interest in and to the intellectual property rights of Derek DeYoung.

## JURISDICTION & VENUE

13. This Court has subject matter jurisdiction over this action based on 28 U.S.C. § 1332(a) in that the action is between citizens of different States and the matter in controversy exceeds the sum of $75,000.00, exclusive of interests and costs.

14. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to these claims occurred in this District. Specifically,

Defendant Canvasfish initiated litigation and moved for an intentionally overbroad *ex parte* Temporary Restraining Order against ShopBase in this District, resulting in the freezing of over $2 million of ShopBase's assets.

15. This Court has personal jurisdiction over Defendants, which have availed themselves of this Court by initiating litigation and moving for an intentionally overbroad *ex parte* Temporary Restraining Order in this District, resulting in the freezing of over $2 million of ShopBase's assets.

### FACTUAL BACKGROUND

16. OpenCommerce operates an e-commerce platform called ShopBase that hosts over 10,000 merchants, each of which have shops that sell various items to consumers around the world. Until May 31, 2021, ShopBase was operated by BGroup.

17. ShopBase—like eBay, Instagram, and others—does not sell goods itself. Rather, it merely provides a neutral platform for third parties to engage in cross-border sales of their products.

18. Each seller who signs up for a ShopBase account agrees to ShopBase's terms of service, which expressly prohibit the sale of products that infringe on others' trademark, copyright, and other intellectual property rights.

19. Additionally, ShopBase has a Digital Millennium Copyright Act ("DMCA") form available on its website, which allows third parties to report potentially infringing products to ShopBase. ShopBase regularly reviews the DMCA complaints it receives and removes infringing content sold by third parties on ShopBase.

20. ShopBase also removes infringing content and bans third-party sellers when it receives notice of potential infringement through other means, including but not limited to,

emails, cease and desist letters, takedown requests, and communications through counsel.

21. In January 2020, DeYoung filed the Michigan Lawsuit.

22. ████████████████████████████████████████████████████
████████████████████████████████████████████████████
██████████████████████████████████

23. ████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

24. ████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████

25. On or about July 12, 2021, DeYoung, through Canvasfish and attorneys at the law firm Revision Legal PLLC (who represented DeYoung in the Michigan Lawsuit), initiated the Illinois Lawsuit by filing its complaint ("Illinois Complaint") under seal.

26. Attached as Schedule A to the Illinois Complaint was a list of 51 websites (including four ShopBase sites) that Canvasfish claimed were operating as aliases selling counterfeit goods on behalf of the John Doe defendants.

27. Neither OpenCommerce nor BGroup nor any other ShopBase Party, ███████ ██████████████████████, was named as a defendant in the Illinois Lawsuit or served with any papers notifying it of the lawsuit's existence.

28. Three weeks later, on August 3, 2021, Canvasfish moved for an *ex parte*

temporary restraining order ("TRO") against ShopBase, among others, seeking to freeze assets and/or accounts that Canvasfish claimed were linked to the sale of infringing products. As with the Illinois Complaint, Canvasfish filed the TRO motion under seal and without notifying ShopBase of the extraordinary actions Canvasfish was taking to freeze the assets ShopBase uses to pay employees and otherwise operate its business.

29. On August 10, 2021, Canvasfish obtained the requested relief of an *ex parte* temporary restraining order, without any notice to ShopBase.

30. Upon information and belief, to obtain this extraordinary relief against ShopBase, Canvasfish and its counsel presented the Court with a series of unfounded assertions and careless assumptions about ShopBase's PayPal accounts and its relationship to the allegedly infringing websites listed in Schedule A to the Illinois Complaint.

31. ShopBase uses certain PayPal accounts in connection with its operation of the ShopBase platform. Specifically, ShopBase offers third-party sellers the option to process payments through ShopBase PayPal accounts for sales made by customers on the ShopBase platform. These accounts are used to manage ShopBase's PayPal transactions at large and are not specifically associated with any particular sellers.

32. On August 16, 2021, nearly a week after Canvasfish obtained its requested *ex parte* TRO, ShopBase received a notification from PayPal that ShopBase's access to two accounts containing over $2 million was "temporarily limited." ShopBase contacted PayPal to investigate.

33. On August 17, 2021, PayPal informed ShopBase that its two PayPal accounts had been "restricted pursuant to a Sealed Order," but stated that it was "unable to provide any information" to ShopBase related to the order. In response to further inquiry from ShopBase,

6

PayPal stated that it was "unable to provide further details until 15 days have passed," at which time PayPal could provide ShopBase with "the case details and contact information for the law firm."

34. On September 1, 2021, PayPal provided ShopBase with contact information for Revision Legal, PLLC ("Revision") and advised ShopBase to contact Revision with any questions about the pending litigation. ShopBase immediately engaged counsel for this purpose, and that same day, counsel for ShopBase emailed Amanda Osorio, an attorney at Revision, to inquire about the freezing of ShopBase's PayPal accounts.

35. On September 1, 2021, counsel for ShopBase received a response from another Revision attorney, John DiGiacomo. Mr. DiGiacomo informed counsel for ShopBase that the "Northern District of Illinois issued a temporary restraining order on August 10, 2021, freezing the assets of a number of counterfeiters of Mr. DeYoung's works, including those associated with the website usbeach.co," which was one of the websites listed in Schedule A to Canvasfish's Illinois complaint and a user of the ShopBase platform.

36. Mr. DiGiacomo told counsel for ShopBase that he had determined which PayPal accounts were associated with usbeach.co by performing a number of "test buys." Based on these "test buys," Mr. DiGiacomo speculated that ShopBase "owns or is directly involved in usbeach.co," because usbeach.co "utilizes a PayPal account owned by Beekeeting"—the former name for the OpenCommerce business entity—and because the "support email address associated with usbeach.co is also owned by Beekeeting."[4]

37. Mr. DiGiacomo then informed ShopBase that he had "tied a second website," famille.gifts, to usbeach.co, because "[b]oth websites share the same Google Analytics tag."

---

[4] Prior to being re-named to OpenCommerce, the entity was called Beeketing, Inc., not "Beekeeting."

7

Mr. DiGiacomo represented that he made one purchase through famille.gifts using a credit card, and that the charge came from PrintBase, another OpenCommerce entity. Mr. DiGiacomo then "performed a second test buy" from famille.gifts—this time through its PayPal checkout—and "was charged yet again by Beekeeting."

38. According to Mr. DiGiacomo, this handful of "test buys" "confirmed" that usbeach.co and another website listed on Schedule A, woonishop.com, were "directly owned and operated by Shopbase," since these websites "utilize [ShopBase's] PayPal account."

39. Although, on information and belief, Canvasfish had already made similar representations to the court in obtaining its *ex parte* TRO, this was the first time ShopBase or its counsel became aware of the speculative inferences Mr. DiGiacomo had drawn from his various "test buys"—or that these speculative inferences formed the basis for the unfounded assertions Canvasfish presented to the District Court in its efforts to freeze ShopBase's PayPal accounts.

40. But Mr. DiGiacomo's email took it a step further, revealing the true motives behind Canvasfish's efforts to restrain ShopBase's assets: "We have identified three of our client's registered works that were offered for sale on the usbeach.co website," Mr. DiGiacomo wrote. "Consequently, our client intends to seek statutory damages of $450,000 against your client for its willful direct infringement. This is our client's initial demand."

41. In case ShopBase was not interested in pursuing a quick five- or six-digit settlement ███████████████████, Counsel for Canvasfish made clear what the consequences would be:

> Presumably, your client will argue that it is a service provider and that these websites are merely using its PayPal account. Should your client take this position, we intend to notify PayPal's general counsel that your client is acting as a money transmitter in violation of PayPal's terms and request that PayPal terminate all Beekeeting-associated accounts and add Beekeeting to the MATCH list.

42. On September 6, 2021, counsel for ShopBase, Jennifer Puplava, responded to

8

Mr. DiGiacomo's email as follows:

> You may recall my representation of the ShopBase Defendants in the Michigan litigation settled at the beginning of 2020 between my clients and Mr. DeYoung. I have attached ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
>
> My clients continue to . . . operat[e] the ShopBase platform, and learned last week that some of the ShopBase payment accounts had been frozen, and further from your email below, that this freeze was the result of a new lawsuit you have filed on behalf of your client's new LLC in the Northern District of Illinois.

43. Ms. Puplava's email continued:

> This was a surprise to ShopBase, [as] it received no DMCA takedown notice from you or your client or other notification of these allegedly infringing works being sold through the ShopBase platform, either through the provided page at https://www.shopbase.com/dmcareport or via the dedicated email address ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

44. The email went on to say that "after reviewing [Canvasfish's] complaint, [ShopBase] has concluded that [only four of the fifty-one] websites identified in [Canvasfish's] lawsuit are using the ShopBase platform," and that ShopBase "disabled these [four] websites" when it learned of potentially the infringing products being sold through them.

45. Ms. Puplava's email also informed Mr. DiGiacomo of several more critical facts. For example, Ms. Puplava informed Mr. DiGiacomo that "[o]ther than providing access to the platform to third parties to use in connection with development and payment, [ShopBase has] had no involvement with the development of the websites or the creation of materials sold through the websites." Ms. Puplava also wrote that ShopBase has "not received any products from these websites, and thus have no materials to destroy."

46. Furthermore, Ms. Puplava informed Mr. DiGiacomo that ShopBase had "segregated payments related to the [four] websites identified above," and stated that "if you have these PayPal payment accounts released promptly this week, my client is willing to hold all funds from the allegedly infringing websites until further court order, in addition to providing

9

ongoing cooperation in your prosecution of the pending lawsuit against the infringing parties."

47. Ms. Puplava concluded her email to Mr. DiGiacomo as follows:



It is our hope that, rather than battle this out in court, we can work together amicably with a shared goal of eliminating infringement of your client's work. We would appreciate your prompt response regarding your client's willingness to proceed as set forth above, so that we may evaluate whether we must take emergency action with the court to release the payment accounts.

48. Counsel for Canvasfish replied to Ms. Puplava's email the following day. In the email, Mr. DiGiacomo reiterated his unfounded claims that ShopBase "owns and operates these [infringing] websites" and that "usbeach.co and woonishop.com are directly owned and operated by Shopbase as confirmed by our test buys," a statement that is not true.

49. Mr. DiGiacomo further accused ShopBase of "operating illegally by acting as a money transmitter without of license and in violation of PayPal's terms of service," threatening again "to reach out to PayPal this afternoon to determine whether your client is authorized as a money transmitter and whether PayPal authorized it to use its PayPal account to provide services to third parties."

50. Meanwhile, ShopBase has written correspondence from PayPal confirming that its process of handling funds is lawful and approved by PayPal.

51. By September 8, 2021, the asset freeze obtained at Canvasfish's request was causing significant damage to ShopBase's business and substantially hindering ShopBase's ability to operate its business.

52. On September 8, 2021, counsel for ShopBase, Vivek Jayaram, appeared in the

10

Illinois Lawsuit and attempted to view Canvasfish's sealed TRO filings to better understand how Canvasfish's TRO request had led the District Court to freeze over $2 million of ShopBase's assets. Yet, ShopBase was still blocked from viewing Canvasfish's sealed TRO motion.

53.   At the time of this filing, ShopBase has yet to receive from Canvasfish or its counsel any of the pleadings or TRO filings in this case and has yet to be granted access to the unredacted TRO motion on PACER (despite numerous requests). ShopBase's allegations concerning the presumed contents of Canvasfish's TRO motion are based partially on information and belief and asserted in good faith on the belief that the District Court would not have granted such a sweeping order on an *ex parte* basis without being told representations similar to those made in Mr. DiGiacomo's emails to ShopBase's counsel.

54.   On September 10, 2021, in an effort to unfreeze at least a portion of the $2 million in ShopBase's two PayPal accounts, ShopBase filed a motion to modify the TRO, explaining that a $2 million asset freeze "is *far* greater than what 'is reasonably necessary to secure the (future) equitable relief' that Plaintiff may be entitled to (if any) against OpenCommerce."

55.   On September 13, 2021, in an attempt to correct Defendants' misunderstanding of ShopBase and its business, counsel for ShopBase emailed Mr. DiGiacomo and requested that Canvasfish ask the court to release the portion of the funds in ShopBase's PayPal accounts that had absolutely nothing to do with any sales of any potentially infringing products.

56.   In his email, Mr. Jayaram stated:

> [A]s you already know, the *ex parte* TRO entered by the Court at your request has caused serious harm to our client. The TRO has resulted in the freezing of two PayPal accounts containing over $2 million in assets. As you were informed by my client's Michigan counsel, Jennifer Puplava, nearly a week ago, my client uses these PayPal accounts for a wide range of business activities, and the vast majority of the funds in these accounts cannot be linked in any way to sales of any potentially

infringing products. In fact, as far as we know, the only sales of *potentially* infringing products that *can* be linked to either of the accounts are the purchases that *you yourself* made. A freeze of the accounts in their entirety is therefore patently overly broad—particularly given the fact that the client has already shut down the four websites at issue and segregated payments related to those websites.

57. Mr. Jayaram then informed Mr. DiGiacomo that one of the frozen PayPal accounts was not used to process orders for *any* of the four ShopBase-affiliated websites listed on Schedule A of Canvasfish's complaint:

[W]have recently learned from the client that one of the frozen PayPal accounts at issue (billing@printbase.co) was never used to process orders on *any* of the four ShopBase-affiliated websites listed on Schedule A. Instead, this PayPal account was used to process a purchase you made from famille.gifts—a website that is not listed on Schedule A—for a t-shirt that bears an image of a dog, which has no connection to Mr. DeYoung's works whatsoever.

58. "In light of this new information," Mr. Jayaram wrote:

[W]e must reiterate Ms. Puplava's previous request that you have these PayPal accounts unfrozen immediately by asking the Court to exclude them from the TRO. At the very least, we ask that you take immediate steps to exclude one of the accounts (billing@printbase.co) from the TRO, now that you have been informed that the account was not used to process any of the allegedly infringing purchases you made through any of the ShopBase-affiliated websites listed on Schedule A. Surely you can agree that this account should not remain frozen when it played no part in processing any of the sales of allegedly infringing products that you complain of.

59. Mr. Jayaram's email continued:

Regardless of whether you intended to achieve such a sweeping and disproportionate freeze of our client's assets by filing the TRO (which we have no way of knowing because you still have not provided us with the TRO papers you filed, and our client is blocked from viewing the unredacted [versions] on PACER), the facts I have just laid out make clear that the TRO is overly broad and causing unnecessary harm to my client, and we believe that as the moving party you are in the best position to undo that harm with a simple request to the Court . . . [T]he quickest way to put a stop to this is for you to ask the Court to exclude our client's PayPal accounts—or, at the very least, the billing@printbase.co account—from the TRO. We will continue to provide ongoing cooperation in your prosecution of the pending lawsuit against the allegedly infringing parties, as we have done from the moment we learned of it.

60. Mr. DiGiacomo's response, that same day, was brief and contained the same

12

unfounded assertions that led to the asset freeze in the first place:

> Both accounts (the '736 and the '193 accounts) that were frozen as a result of the TRO and that contain the billing@printbase.co email address were directly used by usbeach.co to sell infringing goods, so they are properly a part of the Court's TRO order.

61. In other words, even after being informed that the vast majority of assets frozen in ShopBase's PayPal accounts had absolutely *nothing* to do with the sale of *any* potentially infringing products; even after being informed that one of the frozen PayPal accounts at issue (billing@printbase.co) was *never* used to process orders for *any* of the four ShopBase-affiliated websites listed on Schedule A—and that the "test buy" which led Canvasfish to request a freeze of this account was for a t-shirt bearing an image of a dog, which has no connection to Mr. DeYoung's works whatsoever; and even after learning of the significant harm the overly broad asset freeze was causing to ShopBase's business in real-time; Defendants *still* refused to take steps to narrow the scope of the TRO so that it would accurately reflect what is reasonably necessary to secure any potentially counterfeiting profits in those accounts and allow ShopBase to continue operating its business in the ordinary course.

62. Instead, Defendants have used the intentionally overbroad asset freeze as leverage to extract a settlement from ShopBase, knowing that ShopBase cannot operate its business with the current TRO in place and betting that ShopBase would rather enter a quick settlement than see its business go under.

63. Meanwhile, to keep up with operating costs over the past three weeks, ShopBase has had to lay off approximately ten employees. It has had to pull over $1.5 million out of the company's savings to be able to continue paying its suppliers. Roughly half of its incoming revenue is untouchable as it is being processed through its frozen PayPal accounts. And it has been forced to seek over $2 million in emergency loans on extremely unfavorable terms, just to

be able to continue operations.

64. ShopBase brings this lawsuit to hold Canvasfish and Mr. DeYoung accountable for the damage they have caused through their blatant abuse of the judicial process and failure to comply with ███████████████████████████████.

### COUNT I
### Abuse of Process
### (against Canvasfish.com, LLC)

65. ShopBase realleges paragraphs 1 through 64 as though they were fully incorporated herein.

66. Defendant Canvasfish and its counsel filed the Illinois Lawsuit for improper purposes. Upon information and belief, Canvasfish performed little if any due diligence and pre-filing fact investigation, and then named dozens of websites in its complaint intending to see what sums it could extort from ShopBase.

67. Canvasfish then demanded $450,000 from ShopBase, regardless of whether this amount bears any relation to the value of any potentially counterfeiting sales by ShopBase-affiliated websites or any actual damages Canvasfish may have suffered.

68. Canvasfish's improper purposes in bringing this action are illustrated by the facts alleged in the foregoing paragraphs of this complaint.

69. Having obtained a sealed TRO against ShopBase that resulted in the freezing of over $2 million in ShopBase's assets, Canvasfish chose to take advantage of the TRO as it applies to ShopBase, even after being informed that the vast majority of assets frozen in ShopBase's PayPal accounts had absolutely <u>nothing</u> to do with the sale of *any* potentially infringing products, and that one of the frozen PayPal accounts at issue (billing@printbase.co) was <u>never</u> used to process orders for *any* of the four ShopBase-affiliated websites listed on

Schedule A.

70. Even after being informed that the "test buy" which led Canvasfish to request a freeze of the PayPal account billing@printbase.co was for a t-shirt bearing an image of a dog—an image which has no connection to Mr. DeYoung's works whatsoever—and after learning of the disastrous impact the TRO has had on ShopBase's business, Canvasfish and its counsel still refused to take steps to narrow the scope of the intentionally overbroad TRO that Canvasfish had obtained.

71. Canvasfish's motive in seeking an intentionally overbroad TRO against ShopBase was not to enjoin any ongoing infringement or secure potentially counterfeiting profits for future equitable relief, but rather to freeze as much of ShopBase's assets as possible in hopes of extorting a settlement from ShopBase.

72. The foregoing acts of Canvasfish constitute an abuse of process under Illinois common law. Canvasfish's actions were intended to (and did) lead to issuance of legal process in an attempt to misuse or pervert regular and lawful court process in a tortious and improper way.

73. Canvasfish's unlawful tactics have caused and continues to cause significant damage to ShopBase.

74. By way of example but not limitation, to keep up with operating costs over the past three weeks, ShopBase has had to lay off approximately ten employees. It has had to pull over $1.5 million out of the company's savings to be able to continue paying its suppliers. Roughly half of ShopBase's incoming revenue is untouchable as it is being processed through its frozen PayPal accounts. And ShopBase has been forced to seek over $2 million in emergency loans on extremely unfavorable terms, just to be able to continue operations. Moreover,

ShopBase has already incurred substantial attorneys' fees trying to undo the ongoing damage that Canvasfish's actions have caused.

## COUNT II
### BREACH OF CONTRACT
**(against Derek DeYoung)**

75. ShopBase realleges paragraphs 1 through 74 as if they were fully incorporated herein.

76. In January 2020, DeYoung filed the Michigan Lawsuit against various ShopBase entities. ██████████████████████████████████████████████ ████████.

77. ████████████████████████████████████████████████ ██████████████████████.

78. ████████████████████████████████████████████████



79. On or about July 12, 2021, DeYoung, through Canvasfish and attorneys at the Revision Legal PLLC (who also represented DeYoung in the Michigan Lawsuit), initiated a

federal lawsuit in the Northern District of Illinois alleging trademark and copyright infringement against ten "John Doe" defendants in connection with online sales of products containing allegedly counterfeit versions of Canvasfish's trademarks and/or unauthorized use of Canvasfish's copyrights.

80. On September 8, 2021, OpenCommerce was named as a defendant in the Illinois Lawsuit, and counsel for Canvasfish has referred to OpenCommerce as "defendants" in the litigation on multiple occasions.

81. On August 3, 2021, Canvasfish moved for an *ex parte* temporary restraining order ("TRO") against ShopBase, among others, which resulted in the freezing of two of ShopBase's PayPal accounts containing over $2 million collectively.

82. Never before filing the Illinois Lawsuit or moving for and obtaining an *ex parte* TRO against ShopBase did Mr. DeYoung or his representatives notify ShopBase of any alleged infringing products being sold on the ShopBase platform. DeYoung did not submit a DMCA notice on the ShopBase website, nor did Mr. DeYoung provide notice and an opportunity to cure ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬.

83. Instead, DeYoung, through his attorneys and attorneys for his company, Canvasfish, sued ShopBase in federal court and asked the court to freeze over $2,000,000 in assets belonging to ShopBase, without ever providing ShopBase with notice or an explanation. Because the complaint and TRO motion were filed under seal and DeYoung never bothered to notify ShopBase of the litigation by service or any other means, ShopBase did not learn of the lawsuit until September 1, 2021, when it discovered that its PayPal accounts had been frozen pursuant to Canvasfish's requested TRO.

84. ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

██████████████████████████████████████████████████████████

85. ██████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████

86. ██████████████████████████████████████████████

████████████████████████████████████████

87. ██████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████

88. As a result of DeYoung's breach, ShopBase has been damaged in the amount of more than $75,000, plus interest and attorneys' fees.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs OpenCommerce Group, Inc. and BGroup Limited request that this Court enter judgment in its favor and against Defendants Derek DeYoung and Canvasfish.com, LLC, on both counts alleged herein and that this Court:

A. Enter judgment on Counts I and II against Defendants and in favor of Plaintiffs on all applicable counts in an amount to be determined at trial;

B. Order requiring Canvasfish to take steps to modify or dissolve the intentionally overbroad TRO it obtained against ShopBase in violation of principles of equity and fairness;

C. Enter any other relief that this Court deems necessary;

D. Award to Plaintiffs their costs and attorneys' fees to the extent not awarded above; and

## JURY DEMAND

Plaintiffs hereby demand a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Dated: September 15, 2021

Respectfully submitted,

JAYARAM LAW, INC.

By: */s/ Vivek Jayaram*
    Vivek Jayaram
    Palak V. Patel
    125 S. Clark Street, Suite 1175
    Chicago, IL 60603
    (312) 212-8676
    vivek@jayaramlaw.com
    palak@jayaramlaw.com

*Attorneys for OpenCommerce Group, Inc. and BGroup Limited*